IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ARMANDO CARRILLO and §<br>CHRISTINA CARRILLO, §<br>    Plaintiffs, §<br>§<br>v. §<br>§<br>THE BANK OF NEW YORK MELLON §<br>FKA THE BANK OF NEW YORK, AS §<br>TRUSTEE FOR THE §<br>CERTIFICATEHOLDERS OF THE §<br>CWABS INC., ASSET-BACKED §<br>CERTIFICATES, SERIES 2007-10 and §<br>SPECIALIZED LOAN SERVICING, LLC, §<br>    Defendants. § | Civil Action No. 3:19-CV-2125-S-BH<br><br><br><br><br>Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Before the Court for recommendation is *Plaintiffs' Motion to Remand and Brief in Support of Same*, filed March 2, 2020 (doc. 11). Based on the relevant filings and applicable law, the motion should be **DENIED**.

**I. BACKGROUND**

This case involves the foreclosure of property located at 910 N. Clinton Avenue, Dallas, Texas 75208 (the Property). (*See* doc. 1-1 at 8.)[2] On August 1, 2019, Armando Carrillo and Christina Carrillo (Plaintiffs) filed this *pro se* suit against The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificateholders of the CWABS Inc., Asset-Backed Certificates, Series 2007-10 (BONY) and Specialized Loan Servicing LLC (SLS) (collectively, Defendants) in the 101st District Court of Dallas County, Texas. (*See id.* at 5-13.) They allege that

---

[1] By *Special Order No. 3-251*, this case was automatically referred for full case management.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

they are the homestead owners of the Property. (*Id*. at 8.) On May 17, 2007, they refinanced and obtained a home equity loan from Countrywide Home Loans Inc., and executed a note (Note) and Home Equity Security Agreement (Deed of Trust). (*Id.*) They allege that BONY is the current holder or owner of the Note, and that SLS is the current servicer. (*Id.*)

Plaintiffs filed this action to prevent the foreclosure of the Property and "to remove a cloud on their homestead, quieting title in favor of [them]." (*Id*. at 5-6.) They allege that Defendants lack the authority to foreclose because their "violations of Texas Constitution art. XVI, § 50(a)(6), governing Home-Equity loans, render Defendants' lien void *ab initio.*" (*Id.*) They assert claims for quiet title and for violations of the Texas Constitution and seek declaratory judgment and permanent injunction to stop the foreclosure of the Property. (*Id*. at 9-11.) They also seek statutory damages, actual damages, exemplary damages, treble damages, pre-judgment and post-judgment interest, costs, and attorney's fees. (*Id*. at 12.)

On September 6, 2019, Defendants removed this action to federal court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. (doc. 1 at 1.) On March 2, 2020, Plaintiffs moved to remand the case to state court for lack of subject matter jurisdiction. (*See* doc. 11 at 2.) Defendants filed a response on March 20, 2020 (doc. 19), but Plaintiffs did not reply. The motion is now ripe for recommendation.

## II.  MOTION TO REMAND

Plaintiffs argue that "[t]he Court should remand this case to the 101st Judicial District Court of Dallas County, Texas because complete diversity has not been established among the active parties to this lawsuit." (doc. 11 at 2.)

### A.     Legal Standard

Any civil action brought in state court may be removed to federal court if the district court has original jurisdiction over that action. 28 U.S.C. § 1441(a). A district court's original jurisdiction is of two types: federal question jurisdiction and diversity jurisdiction. 28 U.S.C. §§ 1331, 1332. Federal question jurisdiction exists in all civil actions arising under the Constitution, laws, or treaties of the United States. *Id.* § 1331. Diversity jurisdiction exists in all civil actions where the amount in controversy exceeds $75,000.00, exclusive of interests and costs, and there is diversity of citizenship between the parties. *Id.* § 1332(a).

To determine whether it has federal jurisdiction over the removed case, the court must "consider the claims in the state court petition as they existed at the time of removal." *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995)). "The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Id.* "[A]ny doubt about the propriety of removal, must be resolved in favor of remand." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).

"[W]hen a court performs its duty to verify that it has jurisdiction, it may be required to survey the entire record, including the defendant's pleadings, and base its ruling on the complaint, on undisputed facts, and on its resolution of disputed facts." *Aquafaith Shipping, Ltd. v. Jarillas*, 963 F.2d 806, 808 (5th Cir. 1992) (citation omitted); *see also Smith v. Estate of Wagner*, No. CIV A H 06-02629, 2006 WL 2729282, at *3 (S.D. Tex. Sept. 25, 2006) (explaining that a "court ... [may] consider the defendant's notice of removal, other pleadings, and the record as of the time of removal if necessary to shed light on the plaintiff's pleadings"). "The purpose of this careful survey, however,

3

is to shed light on the plaintiff's pleadings. The court's focus is on the plaintiff's pleadings, not the defendant's." *Aquafaith*, 963 F.2d at 808.

Because no federal question is presented in this case, removal was proper only if Defendants met their burden of showing that there is diversity of citizenship between the parties, and that the amount in controversy exceeds $75,000.00. *See Carillo v. JP Morgan Chase Bank, N.A.*, No. EP-12-CV-222-KC, 2012 WL 3276971, at *3 (W.D. Tex. Aug. 9, 2012).

**B.    Diversity of Citizenship**[3]

An action removable based on diversity jurisdiction may not be removed if "any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). A case that is removed under § 1332 must have "complete diversity" of citizenship. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005); *see also* 28 U.S.C. § 1332. This means that a plaintiff may not share citizenship with any defendant. *Whalen v. Carter*, 954 F.2d 1087, 1094 (5th Cir. 1992). The party asserting diversity jurisdiction must "distinctly and affirmatively" allege the citizenship of all the parties. *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988).

Plaintiffs argue that "complete diversity has not been established" because the CWABS Inc., Asset Backed Certificates, Series 2007-10 Trust (CWABS Trust) "is a real and substantial party necessary to this lawsuit," but Defendants "have not determined nor disclosed the citizenships of" the trust's certificateholders. (doc. 11 at 2.) Defendants respond that they must "only establish the citizenship of the trustee in order to establish diversity because the Plaintiffs only sued the trustee, not the trust," and because "BONY controls the Trust." (doc. 19 at 3, 7 (underline original)).

---

[3]Plaintiffs do not dispute that the amount in controversy exceeds $75,000.00 exclusive of interests and costs. *See* 28 U.S.C. § 1332(a).

Generally, "when a trustee files a lawsuit or is sued in [its] own name, [its] citizenship is all that matters for diversity purposes." *Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1016 (2016) (citing *Navarro Savings Assn. v. Lee*, 446 U.S. 458, 462-66 (1980)). For this general rule to apply, the trustee must be an "active trustee," meaning it has "real and substantial" control over the trust's assets. *See C.T. Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990) (citing *Navarro*, 446 U.S. at 465). Active trustees "possess[ ] certain customary powers to hold, manage, and dispose of assets for the benefit of others," and are authorized "to take legal title to trust assets, to invest those assets for the benefit of the shareholders, and to sue and be sued in their capacity as trustees." *Navarro*, 446 U.S. at 464. Accordingly, "[w]here a trustee has been sued or files suit in [its] own name, the only preliminary question a court must answer is whether the party is an 'active trustee[ ] whose control over the assets held in [its] name[ ] is real and substantial.'" *Justice v. Wells Fargo Bank Nat'l Ass'n*, 674 F. App'x 330, 332 (5th Cir. 2017) (per curium) (quoting *C.T. Carden*, 494 U.S. at 191).

Because Plaintiffs sue BONY in its capacity as the trustee of the CWABS Trust, its citizenship as trustee controls for diversity jurisdiction purposes so long as it possesses the sort of "real and substantial control" over the trust's assets such that it can be considered an "active trustee." *See Navarro*, 446 U.S. at 464; *Justice*, 674 F. App'x at 332.

Defendants contend that the Pooling Service Agreement (PSA) for the CWABS Trust "clearly shows that BONY controls as trustee." (doc. 19 at 7.) The PSA provides that "all right, title and interest in and to the Initial Mortgage Loans," (i.e., the trust's assets), are conveyed "to the Trustee for benefit of the Certificateholders." (doc. 19-1 at 66.) Additionally, it specifies that "[n]o Certificateholder shall have any right to vote . . . or in any manner otherwise control the operation

5

and management of the Trust Fund." (*Id.* at 188.)  The Fifth Circuit found that BONY had "real and substantial" control over trust assets based on similar language in a PSA involving a different trust. *See Bynane v. Bank of New York Mellon for CWMBS, Inc. Asset-Backed Certificates Series 2006-24*, 866 F.3d 351, 357 (5th Cir. 2017) (finding that BONY had "real and substantial" control over trust assets where, under the PSA, "all right, title, and interest in and to the Initial Mortgage Loans" were transferred to it as trustee, and the certificateholders had "only limited rights to vote or otherwise control the operation of the trust").  Moreover, Plaintiffs do not dispute that the PSA conveyed control rights to BONY as trustee of the CWABS Trust.  Given BONY's "real and substantial" control" over the trust assets of the CWABS Trust, its citizenship as trustee controls for diversity jurisdiction purposes. *See Americold*, 136 S. Ct. at 1016; *see, e.g., Bynane*, 866 F.3d at 358-59 ("BONYM's citizenship, not the trust's shareholders' citizenships, is relevant for determining diversity jurisdiction because BONYM was sued in its own name as trustee and it has sufficiently real and substantial control over the trust's assets."); *Dorman v. PHH Mortg. Corp.*, No. 4:19-CV-00592-P, 2020 WL 4904266, at *3 (N.D. Tex. Aug. 19, 2020) ("Accordingly, Deutsche Bank 'possesses the sort of 'real and substantial' control over the [2007-NC1 Trust's] assets discussed in *Navarro*,' which means it is the real party to the controversy and its citizenship determines diversity jurisdiction.") (alterations original).

Here, it is undisputed that Plaintiffs are domiciled in, and citizens of, Texas.  *See Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996) (noting that individuals are citizens of the states in which they are domiciled).  It is also undisputed that BONY is a citizen of New York, and that SLS is a citizen of Colorado.  *See Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 307 (2006) (explaining that for diversity jurisdiction purposes, a national bank "is a citizen of the State in which its main office, as

6

set forth in its articles of association, is located"). Defendants have therefore met their burden to show that the parties are diverse for purposes of diversity jurisdiction.

Because Defendants have shown that there is diversity of citizenship and the amount in controversy exceeds $75,000.00, removal was proper, and the Court has subject matter jurisdiction over this suit. Accordingly, Plaintiffs' motion to remand should be denied.

### III.  RECOMMENDATION

Plaintiffs' motion to remand should be **DENIED**.

**SO RECOMMENDED this 7th day of December, 2020.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE